**FEDERAL HOME LOAN MORTGAGE CORPORATION, Plaintiff,**

v.

**Joseph A. MATASSINO, Jr., and all others, Defendants.**

No. 1:11–CV–3895–CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 3, 2012.

A. Drew Powers, McCalla Raymer, LLC, Roswell, GA, Jimmy Thomas Howell, Jr., Kent Edward Altom, Robert Michael Sheffield, McCalla Raymer, LLC, Atlanta, GA, for Plaintiff.

Francis Xavier Moore, Lindsey L. Walker, Frank X. Moore & Associates, Atlanta, GA, for Defendants.

## *ORDER*

CHARLES A. PANNELL, JR., District Judge.

This matter is before the court on the Federal Home Loan Mortgage Corporation's ("Freddie Mac") motion for reconsideration [Doc. No. 30] and the defendant's motion to stay [Doc. No. 32].

## I. Factual and Procedural Background

This dispossessory proceeding came before the court when Matassino, referred to herein as "the defendant," removed it from the Magistrate Court of Fulton County, Georgia [Doc. No. 1]. This is the second time the defendant has removed a dispossessory proceeding filed by Freddie Mac. The first time, in *"Matassino I,"* this court dismissed the complaint because of the plaintiff's failure to follow a lawful order of the court. *See* Order of Dismissal, Case No. 1:11–CV–2047–CAP [Doc. No. 6] (N.D.Ga. Oct. 19, 2011), *amended by* [Doc. No. 14] (N.D.Ga. Aug. 27, 2012).

Subsequently, Freddie Mac took the position that this court has no subject matter jurisdiction over either *Matassino I* or this matter. The court directed additional briefing on the jurisdictional issue and held that jurisdiction is proper here [Doc. No. 21].

## II. The Plaintiff's Motion for Reconsideration

### A. Legal Standard

■ Parties should not file motions for reconsideration "as a matter of routine practice," but only when "absolutely necessary." L.R. 7.2(E). A motion for reconsideration is not an appropriate mechanism to set forth new theories of law or to introduce new evidence, unless the evidence was previously unavailable. *Mays v. U.S. Postal Service,* 122 F.3d 43, 46 (11th Cir.1997). Likewise, parties cannot use a motion for reconsideration to "relitigate old matters" or "raise argument[s] ... that could have been raised" earlier. *Michael Linet, Inc. v. Village of Wellington, Florida,* 408 F.3d 757, 763 (11th Cir. 2005). A motion for reconsideration should only be granted where there is discovery of new evidence, an intervening change in the controlling law, or the need to correct a clear error of law. *Bryan v. Murphy,* 246 F.Supp.2d 1256, 1258–59 (N.D.Ga.2003). Here, the plaintiff argues that its motion should be granted because the court made a clear error of law in its original order denying the plaintiff's motion to remand.

### B. Analysis

#### 1. *The court's denial of Freddie Mac's motion to remand*

Freddie Mac's charter, which is codified in the U.S.Code, provides, in relevant part:

Notwithstanding ... any other provision of law, (1) the Corporation shall be deemed to be an agency included in sections 1345 and 1442 of such Title 28; (2) all civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value; and (3) any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which the Corporation is a party may at any time before the trial thereof be removed by the Corporation, without the giving of any bond or security....

12 U.S.C. § 1452(f).[1] Despite Freddie Mac's arguments to the contrary, the court concluded that the unambiguous language of the statute gives this court original and removal jurisdiction over a civil action to which Freddie Mac is a party.

■ As the court explained in its order denying remand [Doc. No. 21], there are two ways the Freddie Mac charter grants original jurisdiction to this court. First, § 1452(f)(1) declares Freddie Mac to be an "agency" included in 28 U.S.C. § 1345. That statute gives the district courts "original jurisdiction of all civil actions, suits or proceedings commenced by" an "agency" authorized to sue by Congress. Thus, if Freddie Mac commences any civil action, suit, or proceeding, the district court has original jurisdiction over it. Second, the Freddie Mac charter deems "all civil actions to which" Freddie Mac is a party to arise under the laws of the United States and confers jurisdiction over those actions to this court. 12 U.S.C. § 1452(f)(2). Accordingly, this court has original jurisdic-

---

1. The term "the Corporation" in the charter refers to the Federal Home Loan Mortgage Corporation.

tion over any "civil action, suit or proceeding" where Freddie Mac is the plaintiff. *See* 28 U.S.C. § 1345.

As the court also determined in its prior order, removal to this court was proper. "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant...." 28 U.S.C. § 1441(a). As explained, the court has original jurisdiction over any civil action to which Freddie Mac is a party. Therefore, removal was proper unless some other act of Congress expressly prevents removal or this is not a civil action, suit, or proceeding under federal law.

▮ In its original motion to remand [Doc. No. 6], Freddie Mac put forth two primary arguments in support of its contention that this court does not have jurisdiction over the matter. First, it argued that 12 U.S.C. § 1452(f)(3) gives Freddie Mac the exclusive right to remove actions it has filed in state court. The charter unequivocally provides Freddie Mac the option to remove up to the time of trial. *See* 12 U.S.C. § 1452(f)(3) ("[A]ny civil or other action ... to which the Corporation is a party may *at any time* before the trial thereof be removed by the Corporation ....") (emphasis added). But this language does not expressly limit the applicability of the general removal statute; nor does it expressly limit the ability of other parties to remove so that the exception to the general removal statute would apply. *See* 28 U.S.C. § 1441(a). Rather, the statute merely appears to provide Freddie Mac more flexibility than it would otherwise have in determining when and how to remove. *See, e.g.,* 28 U.S.C. § 1446(b) (providing notice of removal must general-

ly be filed within thirty days of service on the defendant, with consent of all served defendants).

▮ Second, Freddie Mac argued that this case is not a "civil action" because "[a] dispossessory action in Georgia is not a case or controversy for the purposes of Article III, § 2" of the U.S. Constitution. Freddie Mac essentially argued that the "summary" nature of a dispossessory action renders it not a "civil action." This court was bound by *Weems v. McCloud,* 619 F.2d 1081 (5th Cir.1980),[2] to analyze whether this is a civil action by applying its own factor-based analysis based on federal law rather than simply following the Georgia Supreme Court's determination that dispossessories are not civil actions as Freddie Mac argued for the court to do *See* [Doc. No. 21 at 5–9] (applying the *Weems* analysis).

### 2. Freddie Mac's argument for reconsideration

In its motion for reconsideration, Freddie Mac addresses both of its prior arguments for why this court does not have jurisdiction here. As to the first argument, that § 1452(f)(3) gives Freddie Mac the exclusive right to remove actions it has filed in state court, it argues that the court should reconsider its August 7, 2012 order because of a clear error of law. *See Bryan,* 246 F.Supp.2d at 1258–59. In support, Freddie Mac expands its prior statutory analysis of § 1452(f) by reframing its congressional intent argument.

Freddie Mac previously interpreted Congress's intent in drafting § 1452(f) as giving the Corporation the ability to "pursue litigation in a state or federal forum" [Doc. No. 18 at 3]. Freddie Mac now expands that argument to include language

---

**2.** Decisions of the former Fifth Circuit handed down on or before September 30, 1981, are binding on this court. *Bonner v. City of* *Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

from the congressional record concerning 1452(f) and more detailed statutory analysis of the Emergency Home Finance Act of 1970, Pub.L. No. 91–354, § 301, 84 Stat. 450 (Freddie Mac's charter statute). Freddie Mac argues that, read in context and as a whole, its charter statute gives Freddie Mac the exclusive right of removal. In addition, Freddie Mac argues that the chartering statutes of the Federal Savings and Loan Insurance Corporation ("FSLIC") and the Federal Deposit Insurance Corporation ("FDIC"), both of which were passed in the same legislative era as Freddie Mac's charter, prove by analogy that Congress intended for § 1452(f)(3) to give Freddie Mac an exclusive removal right. All of these new arguments for reconsideration are unpersuasive because each indicates (if anything) Congress's intention to ensure that Freddie Mac will always have access to federal court, nothing more.

First, the language in the congressional record is sparse on the meaning of § 1452(f), and what little language there is speaks only to Freddie Mac's access to the federal courts. *See Mendrala v. Crown Mortgage Co.*, 955 F.2d 1132, 1136 n. 5 (7th Cir.1992) (indicating that there is only one specific reference to § 1452(f) in the Senate Report from the time of the bill's passage). The section states in pertinent part: "[§ 1452(f)] gives the Corporation clear authority to bring suit in federal court and to remove to such court any judicial proceedings in which it is involved." S.Rep. No. 91–761, (1970), 1970 U.S.C.C.A.N. 3488, 3514. Nothing in this language suggests that § 1452(f) was meant to give Freddie Mac exclusive removal powers for suits it brings in state court and deprive defendants in such suits from being able to exercise their traditional removal rights.

Next, Freddie Mac argues that when read in conjunction with § 1452(c)(7) of its charter statute, § 1452(f) gives Freddie Mac the power to "decide whether its important federal mission would be better served by a state or federal forum" [Doc. No. 30–1 at. 12]. Section 1452(c) enumerates the powers of the Corporation, and among those is the power "to sue and be sued, complain and defend, in any State, Federal, or other court." 12 U.S.C. § 1452(c)(7). Freddie Mac argues that the disparate sub-sections of § 1452 should be read as a unit meant to benefit Freddie Mac, not its adversaries. While the court agrees that standard statutory interpretation tools that are operative in this Circuit apply to this court's determination of the meaning of § 1452(f)(3), § 1452(c) is clearly an enumeration of corporate powers similar to what is included in a private corporation's charter and bylaws. It includes, *inter alia*, the following powers:

(1) to adopt, alter, and use a corporate seal; (2) to have succession until dissolved by Act of Congress; (3) to make and enforce such bylaws, rules, and regulations as may be necessary or appropriate to carry out the purposes or provisions of this chapter; (4) to make and perform contracts, agreements, and commitments; (5) to prescribe and impose fees and charges for services by the Corporation; (6) to settle, adjust, and compromise, and with or without consideration or benefit to the Corporation to release or waive in whole or in part, in advance or otherwise, any claim, demand, or right of, by, or against the Corporation; [and] (7) to sue and be sued, complain and defend, in any State, Federal, or other court;

12 U.S.C. § 1452(c). Viewed in this context, § 1452(c)(7) is not one aspect of Freddie Mac's removal power, but is instead a corporate power meant to grant Freddie Mac the ability to litigate in any court.

Finally, Freddie Mac draws a comparison between its own charter statute and the removal statutes of the FSLIC and the FDIC. This is an apt comparison because the removal language in § 1452(f)(3) is nearly identical to that in the FSLIC's and the FDIC's removal provisions in the Financial Institutions and Supervisory Act of 1966, Pub.L. No. 89–695, § 102, 80 Stat. 1028, 1042 (FSLIC) and Pub.L. No. 89–695, § 205, 80 Stat. 1028, 1055 (FDIC). The plaintiff argues that because Congress passed this act just four years before the passage of Freddie Mac's charter statute and included nearly identical removal language as part of each corporations' (Freddie Mac, FSLIC, and FDIC) jurisdiction and enforcement provisions, the court should apply judicial interpretation of FSLIC's and FDIC's removal provisions to § 1452(f)(3).

This is a persuasive argument, especially given the dearth of judicial analysis of 1452(f)(3). Nevertheless, the case· law Freddie Mac cites interpreting the FSLIC and FDIC removal statutes only provides strong support for the argument that Congress intended each of these corporations to have ready access to the federal courts. The court in, *In re Federal Sav. and Loan Ins. Corp.*, 837 F.2d 432, 434–35 (11th Cir. 1988), held that the FSLIC's charter statute granted it the power to remove a case in which it was a defendant even though its codefendants had not consented to removal, as the general removal statute requires. And in, *FDIC v. S & I 85–1, Ltd.*, 22 F.3d 1070, 1073 (11th Cir.1994), the court held that the FDIC's charter statute defined FDIC's removal rights, not the general removal statute, allowing the corporation to remove a case even though it was the plaintiff. These cases describe the FSLIC's and FDIC's removal powers. They do not define (or even mention) the removal powers of defendants these corporations have sued.

Freddie Mac's newly presented interpretation of § 1452(f)(3) persuasively supports an argument that Congress intended to provide Freddie Mac with expanded removal rights and the ability to have ready access to federal courts. Freddie Mac has not pointed to any statutory provision, piece of legislative history, or case (binding on this court or otherwise) that indicates that § 1452(f)(3) should be read so as to deprive defendants Freddie Mac has sued in state court of their traditional removal rights. Therefore, the court concludes that Freddie Mac has not met its burden for a motion for reconsideration to show that the court made a clear error of law in its prior order. The court is unmoved from its prior position that Congress unambiguously gave the federal courts original subject matter jurisdiction over all civil actions, suits, and proceedings in which Freddie Mac is the plaintiff.

 Freddie Mac also argues that the court's analysis in its prior order determining that this case involves a civil action includes clear errors of law. The general removal statute, 28, U.S.C. § 1441(a), gives the defendant the right to remove civil actions, and Georgia courts have determined that dispossessories are not civil actions because of their summary nature. *See, e.g., Wilson v. Healey Real Estate & Improv. Co.*, 203 Ga. 52, 45 S.E.2d 656, 658 (1947); *McClintock v. Wellington Trade, Inc.*, 252 Ga. 563, 315 S.E.2d 428 (1984); *see also* 1979 Ga. Op. Atty. Gen. 182, 1979 WL 20860 at *2 (Mar. 28, 1979) (explaining that a dispossessory action is not a civil action or civil suit under Georgia law). Nevertheless, as explained in the prior order denying remand, this court should not look to state law for determining whether a summary proceeding is a civil action but instead must perform its own analysis based on federal law:

[I]t is apparent that a court, in determining its own jurisdiction, must look to the constitution and the laws of the sovereignty which created it. The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts.... It necessarily follows that whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction under the Constitution and laws of the United States.

*Weems,* 619 F.2d at 1087 (quoting *Markham v. City of Newport News,* 292 F.2d 711, 716 (4th Cir.1961)) (alterations and omissions in original). This court applied the factors outlined in *Weems* to dispossessory actions and determined that such actions are indeed civil actions justiciable by this court under the Weems standard.

Freddie Mac now presents arguments addressing several of the factors from *Weems* that this court applied in its prior order denying remand. The court in *Weems* considered seven factors for determining when a summary proceeding should be considered a civil action for purposes of federal jurisdiction. *Id.* at 1089–90. This court determined that most if not all of those factors also show that a dispossessory proceeding exhibits the character of a civil action under federal law. Freddie Mac now challenges the court's application of four of those factors. These four are: (1) The proceedings in a dispossessory are held before a judicial tribunal, even if not one of "general jurisdiction" in Georgia; (2) Notice and service of the summons must be made. *See* O.C.G.A. § 44–7–51; (3) The initiating affidavit is comparable to a complaint, and the defendant may answer. O.C.G.A. §§ 44–7–50(a), –51(b); and (4) While the ultimate issue of possession is not directly pecuniary, there is an "issue" of pecuniary value because pay-

ment of rent can serve as a defense and rent and utilities must be paid into the court's registry during the pendency of the proceeding. O.C.G.A. §§ 44–7–52, –54. The court will address Freddie Mac's challenge to each factor in turn.

 Freddie Mac argues that the court incorrectly applied the first factor because the dispossessory in this case was made in a court of limited jurisdiction (a magistrate court). The court previously determined that because appeals from the magistrate court are to the state superior court, a court of general jurisdiction, this *Weems* factor was satisfied. Freddie Mac argues, however, that such appeals are subject to de novo review and that "a state superior court sitting as an appellate court in a de novo appeal has only the jurisdiction of the magistrate court" [Doc. No. 30–1 at 20] (citing *Giles v. Vastakis,* 262 Ga.App. 483, 585 S.E.2d 905, 906 (2003)). The *Weems* court borrowed this factor for its own analysis from the Supreme Court's determination in *Road District v. St. Louis Southwestern Railway Company,* 257 U.S. 547, 42 S.Ct. 250, 66 L.Ed. 364 (1922), (involving a summary proceeding (condemnation)), which emphasized the importance of the initial state proceeding being before a judicial tribunal rather than a legislative or administrative tribunal for purposes of federal removal jurisdiction. *See Weems,* 619 F.2d at 1089 (citing *Road District,* 257 U.S. at 554, 42 S.Ct. 250). Based on the Supreme Court's analysis, the court in *Weems* determined that the superior court before which Georgia confirmation hearings are held was unquestionably a judicial tribunal; therefore that factor weighed in favor of federal removal jurisdiction. *See id.* at 1089 n. 14. The important distinction for this factor, then, is not between courts of general and limited jurisdiction, but instead between judicial and legislative or administrative tribunals. In Georgia, a

magistrate court is a regular judicial tribunal. *See* O.C.G.A. Title 15 Cha. 10 (delineating the powers of magistrate courts within the Georgia statutory scheme establishing the judicial system generally).[3] Therefore, here, as in *Weems*, the fact that this dispossessory was filed in a judicial tribunal weighs in favor of removal jurisdiction.

Next, Freddie Mac argues that the court incorrectly applied the second factor concerning notice and service. The court in *Weems* determined that the notice and service requirements of confirmation proceedings weighed in favor of establishing federal removal jurisdiction. Specifically, the creditor in a confirmation proceeding must provide notice of the hearing to the debtor and effectuate service under the Georgia Civil Practice Act if the creditor wishes to bring a deficiency suit in relation to the confirmation proceeding. *Weems*, 619 F.2d at 1089. Freddie Mac argues that this court erred in applying this factor in the instant matter because service of process in a dispossessory action is governed by O.C.G.A. § 44–7–51, not Georgia's Civil Practice Act.

This challenge evidences a misreading of *Weems*. The full statement from the *Weems* court is: "If the creditor wishes to bring a deficiency suit [related to the con-firmation proceeding], at least five days notice of the hearing must be given the debtor and service must be by the method specified in the Civil Practice Act." 619 F.2d at 1089. From this it is clear the court was using this aspect of confirmation proceedings as part of its calculus that they are civil actions, not to say that one of the factors for analyzing whether a summary proceeding is a civil action for purposes of determining federal removal jurisdiction is whether the service must be effectuated under the Civil Practice Act. Dispossessory proceedings also require notice and service under O.C.G.A. § 44–7–51. Those requirements may be slightly different from the Civil Practice Act,[4] but they are not so disparate that this court made a clear error of law by concluding in its Weems analysis that the requirement of notice and service in a dispossessory weighs in favor of removal jurisdiction.

Next, Freddie Mac challenges the court's determination that a dispossessory proceeding includes filings comparable to a complaint and answer sufficient to weigh in favor of concluding that this is a civil action for removal purposes. Freddie Mac argues that because a dispossessory is commenced with the filing of an affidavit and concludes with the issuance of a writ of possession (which can be issued by a

---

**3.** As the Supreme Court noted in *Road District,* "The distinction between a proceeding which is the exercise of legislative power and of administrative character and a judicial suit is not always clear." 257 U.S. at 554, 42 S.Ct. 250. The court concludes that because dispossessories are included among the jurisdiction and powers given to magistrate courts, (O.C.G.A. § 15–10–2(6)), and magistrate courts are included in Title 10 Chapter 15 of the Georgia Code, which establishes the court system in Georgia, there can be little question that the magistrate court in this case should be considered judicial rather than legislative or administrative.

**4.** As Freddie Mac points out, O.C.G.A. § 44–7–51 will allow creditors to effectuate service by "posting a copy of the summons and the affidavit on the door of the premises and, on the same day of such posting, by enclosing, directing, stamping, and mailing by first-class mail a copy of the summons and the affidavit to the defendant at his last known address." O.C.G.A. § 44–7–51(a).This so-called "nail and mail" service is only acceptable, however, after the creditor has exhausted all other means of traditional service similar to those required in the Civil Practice Act. *See id.; see also, Davis v. Hybrid Indus., Inc.,* 142 Ga.App. 722, 236 S.E.2d 854, 856 (1977) (concluding that tacking was inappropriate where personal service had been possible).

deputy clerk, unlike a judgment) it is distinct from the confirmation proceeding analyzed in *Weems*. To determine if a proceeding is a civil action, *Weems* requires courts to inquire whether it "provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court." 619 F.2d at 1087. And while the factors the *Weems* court considers are useful guides for purposes of analogy, this statement, not rote following of the considerations *Weems* used should be a court's primary guide. In other words, this factor from *Weems* should be read as directing courts to compare a proceeding at issue to a traditional civil trial. Under that rubric, a dispossessory proceeding is clearly comparable. O.C.G.A. § 44-7-53(a) provides that when a tenant fails to answer, Freddie Mac's description of the proceeding is correct. However, if the tenant answers, "a trial of the issues shall be had in accordance with the procedure prescribed for civil actions in courts of record except that if the action is tried in the magistrate court the trial shall be had in accordance with the procedures prescribed for that court." O.C.G.A § 44-7-53(b). This procedure is nothing if not comparable to the procedure in a traditional civil trial. Because Freddie Mac has put forth no other argument challenging the court's analysis of this factor from *Weems*, the court concludes that Freddie Mac has shown no clear error of law in this respect either.

Finally, Freddie Mac argues that the court "mischaracterize[d] a dispossessory proceeding as one having "an 'issue' of pecuniary value" for purposes of a *Weems* analysis." [Doc. No. 30-1 at 22]. In support of this argument, Freddie Mac contends that a dispossessory is solely about possession; therefore, the court's conclu-

sion that payment of rent can serve as a defense does not create an "issue" pecuniary value. In *Weems*, there was pecuniary value at "issue" because the value of the property could have an effect on possible pecuniary recovery in a later action for deficiency. In a dispossessory action in Georgia, a tenant must pay rent and utility into the registry of the court to be able to remain in possession during litigation, O.C.G.A. § 44-7-53(b), -54, and full payment of rent can be a complete defense to the action. O.C.G.A. § 44-7-52(a). This creates an "issue" of pecuniary value in a dispossessory proceeding (i.e., rent). In *Weems*, as here, a pecuniary issue is, or at least can be, one aspect of the proceeding, and Freddie Mac has made no argument to suggest that *Weems* requires more.[5] The court concludes that Freddie Mac has shown no clear error of law in this respect.

### III. Conclusion

Based on the above analysis, the court hereby DENIES the plaintiff's motion for reconsideration [Doc. No. 30].

The court is very aware that dispossessory actions are now, and have always been, primarily state court matters. State courts are highly familiar with dispossessory procedure, and federal courts are ill-equipped to adjudicate these actions. The court is also aware that its conclusion in its prior order that Congress unambiguously gave the federal courts original subject matter jurisdiction over all civil actions, suits, and proceedings where Freddie Mac is the plaintiff [Doc. No. 21 at 10] creates the potential for federal courts to have to adjudicate large numbers of removed dispossessory actions. The court believes that the policy implications of this outcome

---

5. Freddie Mac also cites this court's conclusion in, *Novastar Mortgage Inc. v. Bennett*, 173 F.Supp.2d 1358, 1361 (N.D.Ga.2001), that the issue of possession is not quantifiable in dol-

lars and cents to support its argument. The question for the court here is not the value of possession but whether an issue of pecuniary value is involved in the proceeding.

are quite problematic, but it is bound by the language of § 1452(f) and has not been presented with nor can find any law to contradict this outcome. Given these policy implications and the fact that this issue is one that the court believes the Eleventh Circuit Court of Appeals has not yet addressed, this matter seems appropriate for interlocutory appeal under 28 U.S.C. § 1292. The statute states:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). The court also believes that this issue is one in which the Court of Appeals could have a "substantial ground for difference of opinion." Therefore, the court certifies this order for interlocutory appeal if Freddie Mac so chooses to appeal within the 10–day timeframe outlined in § 1292(b).

The court notes that there is also a pending motion from the defendant to stay this matter until such time as the Court of Appeals addresses his appeal of the court's order in *Matassino I*, amending the court's granting of the defendant's motion to dismiss [Doc. No. 32]. The court has considered the defendant's motion and is not persuaded by the arguments made therein. Accordingly, the defendant's motion to stay [Doc. No. 32] is DENIED. However, the court's prior order staying this matter [Doc. No. 29] remains in effect until further order of the court.